**IN THE CIRCUIT COURT IN AND FOR BAY COUNTY, FLORIDA**
**FIRST JUDICIAL CIRCUIT**
**CIVIL DIVISION**

**DAVID ALMOND; EDWARD BALS; DELMA BRANNON CULPEPPER; MIKE DOBSON; WANDA DOBSON; JAMES A. DUNN; ROSE DUNN; DAVID B. ELLIOTT; CHRISTOPHER FRAILIE; CINDY GILMORE; WYMAN GILMORE, III; WYMAN GILMORE, JR.; VIVIAN GILMORE; HAROLD GUNNISON; ERIN GUNNISON; CARRIE KATHERINE HAGAN; RICHARD HENDERSON; JOAN P. JONES; MILES F. JONES; MUDASSIR KAZMI; BIF KLUMPP; STEPHANIE KLUMPP; EDWARD REID LOPER; MARK E. LOPER; MATT MCCORD; DAVID MARTIN; CHAD A. MYERS; RAYMOND M. NELSON, JR.; V. WYLYNN GILMORE PHILLIPPI; AARON B. POUNCEY; ARTHUR POUNCY; PAM POUNCY; CHRISTOPHER M. RICHEY; FRAN KLUMPP RIGGS; MARIA CRISTINA BENANDI STREET; ERIC STREET; TOBIN STREET; WILLIAM E. STREET, JR.; JEFF THOMPSON; DONALD WARD; DOUGLAS C. WARD; JEANINE WARD; SETH WILLIS; MARY ALLISON WILLIS; CHARLES H. WILLIAMSON; ANDREW S. GRANT,**

**Plaintiffs,**

**v.**

**DARRYL SEELHORST; OAKPOINT FUND SERVICES LLC; KAPLAN & COMPANY; POINT CLEAR CAPITAL PARTNERS, L.P.; POINT CLEAR CAPITAL MANAGEMENT, LLC; POINT CLEAR CAPITAL ADVISORS, LLC; MICHAEL LAPAT; PRACTUS, LLP;**

**Case No.** 25000133CA

****TRIAL BY JURY REQUESTED****

**and Fictitious Defendants A-Z being those individuals or entities who conspired with the above-named Defendants to commit the wrongful acts set forth hereinafter, and whose identities are unknown, but will be added as defendants when ascertained,** )

**Defendants.** )

______________________________/

**COMPLAINT**

COME NOW Plaintiffs David Almond; Edward Bals; Delma Brannon Culpepper; Mike Dobson; Wanda Dobson; James A. Dunn; Rose Dunn; David B. Elliot; Christopher Frailie; Cindy Gilmore; Wayman Gilmore, III; Wayman Gilmore, Jr.; Vivian Gilmore; Harold "Mike" Gunnison; Erin Gunnison; Carrie Katherine "Katie" Hagan; Richard Henderson; Joan P. Jones; Miles F. Jones; Mudassir Kazmi; Bif Klumpp; Stephanie Klumpp; Edward Reid Loper; Mark E. Loper; Matt McCord; David Martin; Chad A. Myers; Raymond M. Nelson, Jr.; V. Wylynn Gilmore Phillippi; Aaron B. Pouncey; Arthur Pouncy; Pam Pouncy; Christopher M. Richey; Fran Klumpp Riggs; Maria Cristina Benandi Street; Eric Street; Tobin Street; William "Will" E. Street, Jr.; Jeff Thompson; Donald Ward; Douglas C. Ward; Jeanine Ward; Seth Willis; Mary Allison Willis; Charles H. Williamson; Andrew S. Grant (collectively, "Plaintiffs") and hereby file this Complaint against the following Defendants: Darryl Seelhorst; Oakpoint Fund Services LLC; Kaplan & Company; Point Clear Capital Partners, L.P.; Point Clear Capital Management, LLC; Point Clear Capital Advisors, LLC; Michael Lapat; Practus, LLP; and Fictitious Defendants A-Z, being those individuals or entities who conspired with the above-named Defendants to commit the wrongful acts set forth hereinafter, and who identities are unknown, but will be added as defendants when ascertained. In support of this

Complaint, Plaintiffs state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to Fla. Stat. Ann. § 26.012. This is an action for damages that exceeds the sum of FIFTY THOUSAND DOLLARS ($50,000.00), exclusive of interest and costs.

2. Venue is proper in this Court pursuant to Fla. Stat. Ann. § 47.011, § 47.021, and § 47.051.

**PARTIES**

3. At all times material, Plaintiff David Almond was an adult resident of Baldwin County, Alabama.

4. At all times material, Plaintiff Edward Bals was an adult resident of Baldwin County, Alabama.

5. At all times material, Plaintiff Delma Brannon Culpepper was an adult resident of Santa Rosa County, Florida.

6. At all times material, Plaintiff Mike Dobson was an adult resident of Baldwin County, Alabama.

7. At all times material, Plaintiff Wanda Dobson was an adult resident of Baldwin County, Alabama.

8. At all times material, Plaintiff James A. Dunn was an adult resident of East Baton Rouge Parish, Louisiana.

9. At all times material, Plaintiff Rose Dunn was an adult resident of East Baton Rouge Parish, Louisiana.

10. At all times material, Plaintiff David B. Elliot was an adult resident of Dallas County, Texas.

11. At all times material, Plaintiff Christopher Frailie was an adult resident of Baldwin County, Alabama.

12. At all times material, Plaintiff Cindy Gilmore was an adult resident of Tuscaloosa County, Alabama.

13. At all times material, Plaintiff Wayman Gilmore, III was an adult resident of Davidson County, Tennessee.

14. At all times material, Plaintiff Wayman Gilmore, Jr. was an adult resident of Clarke County, Alabama.

15. At all times material, Plaintiff Vivian Gilmore was an adult resident of Davidson County, Tennessee.

16. At all times material, Plaintiff Harold “Mike” Gunnison was an adult resident of Baldwin County, Alabama.

17. At all times material, Plaintiff Erin Gunnison was an adult resident of Baldwin County, Alabama.

18. At all times material, Plaintiff Carrie Katherine “Katie” Hagan was an adult resident of Baldwin County, Alabama.

19. At all times material, Plaintiff Richard Henderson was an adult resident of Baldwin County, Alabama.

20. At all times material, Plaintiff Joan P. Jones was an adult resident of Baldwin County, Alabama.

21. At all times material, Plaintiff Miles F. Jones was an adult resident of Baldwin County, Alabama.

22. At all times material, Plaintiff Mudassir Kazmi was an adult resident of Baldwin County, Alabama.

23. At all times material, Plaintiff Bif Klumpp was an adult resident of Baldwin County, Alabama.

24. At all times material, Plaintiff Stephanie Klumpp was an adult resident of Baldwin County, Alabama.

25. At all times material, Plaintiff Edward Reid Loper was an adult resident of Baldwin County, Alabama.

26. At all times material, Plaintiff Mark E. Loper was an adult resident of Baldwin County, Alabama.

27. At all times material, Plaintiff Matt McCord was an adult resident of Baldwin County, Alabama.

28. At all times material, Plaintiff David Martin was an adult resident of Baldwin County, Alabama.

29. At all times material, Plaintiff Chad A. Myers was an adult resident of Baldwin County, Alabama.

30. At all times material, Plaintiff Raymond M. Nelson, Jr. was an adult resident of Baldwin County, Alabama.

31. At all times material, Plaintiff V. Wylynn Gilmore Phillippi was an adult resident of Clarke County, Alabama.

32. At all times material, Plaintiff Aaron B. Pouncey was an adult resident of Baldwin County, Alabama.

33. At all times material, Plaintiff Arthur Pouncy was an adult resident of Baldwin County, Alabama.

34. At all times material, Plaintiff Pam Pouncy was an adult resident of Baldwin County, Alabama.

35. At all times material, Plaintiff Christopher M. Richey was an adult resident of Williamson County, Tennessee.

36. At all times material, Plaintiff Fran Klumpp Riggs was an adult resident of Baldwin County, Alabama.

37. At all times material, Plaintiff Maria Cristina Benandi Street was an adult resident of Baldwin County, Alabama.

38. At all times material, Plaintiff Eric Street was an adult resident of Baldwin County, Alabama.

39. At all times material, Plaintiff Tobin Street was an adult resident of Baldwin County, Alabama.

40. At all times material, Plaintiff William "Will" E. Street, Jr. was an adult resident of Baldwin County, Alabama.

41. At all times material, Plaintiff Jeff Thompson was an adult resident of Baldwin County, Alabama.

42. At all times material, Plaintiff Donald Ward was an adult resident of Baldwin County, Alabama.

43. At all times material, Plaintiff Douglas C. Ward was an adult resident of Baldwin County, Alabama.

44. At all times material, Plaintiff Jeanine Ward was an adult resident of Baldwin County, Alabama.

45. At all times material, Plaintiff Seth Willis was an adult resident of Baldwin County, Alabama.

46. At all times material, Plaintiff Mary Allison Willis was an adult resident of Baldwin County, Alabama.

47. At all times material, Plaintiff Charles H. Williamson was an adult resident of Baton Rouge, Louisiana.

48. At all times material, Plaintiff Andrew S. Grant was an adult resident of Baldwin County, Alabama.

49. At all times material, Defendant Darryl Seelhorst ("Seelhorst") was an adult resident of Baldwin County, Alabama.

50. Defendant Oakpoint Fund Services LLC ("Oakpoint") is an Ohio limited liability company.

51. Defendant Kaplan & Company ("Kaplan"), upon information and belief, is an Illinois company.

52. Defendant Point Clear Capital Partners, L.P. ("PCCP") is a Delaware limited partnership.

53. Defendant Point Clear Capital Management, LLC ("PCCM") is a Florida limited liability company.

54. Defendant Point Clear Capital Advisors, LLC ("PCCA") is a Florida limited liability company.

55. At all times material, Defendant Michael Lapat ("Lapat") was an adult resident of Florida. Lapat is an attorney licensed to practice law in the state of Florida. Upon information and belief, Lapat does business as the Law Offices of Michael Lapat.

56. Defendant Practus, LLP ("Practus") is a Delaware limited liability partnership.

57. Seelhorst, Oakpoint, Kaplan, PCCP, PCCM, PCCA, and Lapat will be collectively referred to herein as "Defendants."

**FACTUAL ALLEGATIONS**

58. Upon information and belief, Seelhorst created PCCP, PCCM, and PCCA in about 2017-2018 for the purpose of creating and managing a hedge fund. More specifically, the executive summary of PCCP offered to investors like Plaintiffs provided in pertinent part:

The primary investment objective of the Partnership is growth of capital. The business of the Partnership is the buying and selling of securities, including without limitation, stocks, options, warrants, and rights of U.S. and non-U.S. entities.

59. From 2017 through 2024, based on the representations of Seelhorst, and the offering documents created by Lapat, Plaintiffs collectively contributed approximately $25 million to $30 million in capital to PCCP.

60. Seelhorst represented to Plaintiffs that he had been investing for years and had never had a losing year in his life. He also claimed he had never had more than a 10% loss in any given month.

61. Seelhorst also represented to Plaintiffs that he was a "conservative" investor and would never risk more than 25% of each investors' money at any given time. Seelhorst also represented that investors, including Plaintiffs, could withdraw their funds at the end of any trading month. Seelhorst also represented that he had insurance to protect the capital in the fund should something go wrong.

62. Based on representations of Seelhorst, Oakpoint and Kaplan were engaged by PCCP as third-party accountants to review all financial transactions to ensure that the financial records of PCCP were accurate and compliant. Further, Kaplan was engaged to provide monthly audits on PCCP. In fact, for the year ending December 31, 2023, based on Kaplan's audit, Kaplan represented to investors, such as Plaintiffs, that:

> In our opinion, the accompanying financial statements present fairly, in all material respects, the financial position of Point Clear Capital Partners, L.P. as of December 31, 2023, and the results of its operations, changes in partners' capital, and its cash flows for the year then ended in accordance with accounting principals generally accepted in the United States of America.

63. The aforementioned audit report for the year ended December 31, 2023, was provided to investors, such as Plaintiffs, by Seelhorst, Oakpoint, and Kaplan in July 2024.

64. In June 2024, however, Seelhorst sent a letter to investors, including Plaintiffs, informing Plaintiffs that in order to "get ahead of difficult market conditions," he had unilaterally made the decision to pause any redemptions until December 2024.

65. In conjunction with this pause, Seelhorst also reached out to certain investors directly advising them that he would make all the money back, and to stay in the fund because the fund would be harmed should any investor attempt to take any money out.

66. Not long thereafter, investors, including Plaintiffs, received a report from Seelhorst in October 2024, notifying them that the hedge fund had suffered catastrophic losses.

67. Plaintiffs then became aware that substantially all of the capital they had contributed to PCCP had been lost.

68. On November 13, 2024, Plaintiffs received communication from Seelhorst and Practus which informed Plaintiffs that as of October 31, 2024, the fund had ceased trading and the fund had converted all of its investments to cash. The letter also informed investors that Defendants and Practus intended to use the remaining assets of the fund to pay the legal fees of Seelhorst, PCCP, PCCM, and PCCA in litigation filed against them for claims similar to Plaintiffs' claims.

## CAUSES OF ACTION

### COUNT I
### Violations of the Florida Securities and Investor Protection Act
### Fla. Stat. Ann. § 517.301(1)

69. Plaintiffs incorporate all preceding factual allegations set forth in paragraphs 1-68 of this Complaint by reference as if fully set forth herein.

70. Defendants employed a "device, scheme, or artifice to defraud" Plaintiffs in violation of Fla. Stat. Ann. § 517.301(1)(a)(1).

71. Defendants offered or sold securities by means of "untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" in violation of Fla. Stat. Ann. § 517.301(1)(a)(2).

72. Defendants engaged in a "transaction, practice, or course of business which operates or would operate as a fraud or deceit upon [Plaintiffs]" in violation of Fla. Stat. Ann. § 517.301(1)(a)(3).

73. Defendants, in connection with the offer, sale, or purchase of the above-described securities, did, directly or indirectly (i) employ devices, schemes or artifices to defraud; (ii) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (iii) engage in acts, practices, or courses of business which operated as a fraud or deceit on Plaintiffs as more specifically described elsewhere herein, all in violation of Fla. Stat. Ann. § 517.301(1).

74. Plaintiffs justifiably relied upon Defendants' misrepresentations and/or omissions.

75. Defendants' misrepresentations and/or omissions were made with scienter or reckless disregard as to the truth of the communication.

76. Defendants' wrongdoing caused Plaintiffs to suffer damages.

77. Pursuant to Fla. Stat. Ann. § 517.211(2) and (4) Defendants are jointly and severally liable to Plaintiffs for the consideration paid for the investment, plus interest thereon at the legal rate from the date of purchase, less the amount of any income received by the purchaser on the investment upon tender of the security or investment.

## COUNT II
## Fraud/Willful Misrepresentation

78. Plaintiffs incorporate all preceding factual allegations set forth in paragraphs 1-68 of this Complaint by reference as if fully set forth herein.

79. Defendants made misrepresentations of fact in connection with the sale of the above-described securities, both for the purpose of inducing Plaintiffs' purchase of PCCP stock and for inducing Plaintiffs to continue to hold such stock after it was purchased. At the time said misrepresentations were made, Defendants knew that Plaintiffs would rely on their misrepresentations.

80. Said misrepresentations were made willfully or recklessly and with an intent to deceive Plaintiffs.

81. Plaintiffs, who were unaware of the true facts, reasonably relied on said misrepresentations in reaching their investment decision.

82. As a direct and proximate consequence of Plaintiffs' reliance on said misrepresentations, Plaintiffs were injured through the loss of their entire investment in PCCP stock.

**COUNT III**
**Fraudulent Concealment**

83. Plaintiffs incorporate all preceding factual allegations set forth in paragraphs 1-68 of this Complaint by reference as if fully set forth herein.

84. In connection with the sale of the above-described securities, Defendants suppressed material facts which they were under an obligation to disclose both for the purpose of inducing Plaintiffs' purchase of PCCP stock and for inducing Plaintiffs to continue to hold such stock after it was purchased. At the time said omissions of facts were made, Defendants knew, or reasonably should have known, that the omitted information was material to Plaintiffs' investment decision.

85. Said omissions and suppressions of material fact were made willfully or recklessly and with an intent to deceive Plaintiffs.

86. Plaintiffs, who were unaware of the true facts, reasonably relied on said material omissions in making their decision to purchase PCCP stock and to continue to hold such stock after purchase.

87. As a direct and proximate consequence of Plaintiffs' reliance on said material omissions, Plaintiffs have been damaged through the loss of their entire investment in PCCP securities.

**COUNT IV**
**Negligent Misrepresentation**

88. Plaintiffs incorporate all preceding factual allegations set forth in paragraphs 1-68 of this Complaint by reference as if fully set forth herein.

89. Defendants owed Plaintiffs a duty: to use reasonable care to ensure that representations made about the PCCP stock and its value, the finances of PCCP, and the capabilities, the financial wherewithal and acumen of Defendants, were true; to refrain from omitting material facts necessary to avoid misleading Plaintiffs; and to fairly and adequately communicate all material facts to Plaintiffs.

90. Defendants failed to exercise reasonable care in making accurate and timely representations about PCCP, its stock, its financial condition, and reasonable financial prospects, both for the purpose of inducing Plaintiffs' purchase of PCCP stock and for inducing Plaintiffs to continue to hold such stock after purchase.

91. At the time said misrepresentations and omissions of fact were made, Defendants knew, or should have known, Plaintiffs would rely on their misrepresentations and omissions.

92. Plaintiffs, who were unaware of the true facts, reasonably, foreseeably, and justifiably relied on said misrepresentations and omissions in reaching their investment decision.

93. As a direct and proximate consequence of Plaintiffs' reliance on said misrepresentations and omissions, Plaintiffs were injured through the loss of their entire investment in PCCP securities.

**COUNT V**
**Breach of Fiduciary Duty**

94. Plaintiffs incorporate all preceding factual allegations set forth in paragraphs 1-68 of this Complaint by reference as if fully set forth herein.

95. PCCP is a closely-held business.

96. Seelhorst, as PCCP's controlling officer, undertook fiduciary duties to Plaintiffs to act with the utmost care, skill, and diligence in the operation of PCCP, including the duty to keep Plaintiffs timely and accurately informed of all material facts related to their investment in and the operation of PCCP and to not divert and/or misappropriate assets of PCCP for Seelhorst's own personal benefit.

97. Seelhorst failed to exercise the requisite care, skill, and diligence in performing his duties for or on behalf of Plaintiffs and therefore breached his fiduciary duties owed to Plaintiffs.

98. Seelhorst's breaches of fiduciary duties have directly and proximately caused Plaintiffs to suffer damages via the loss of their investment in PCCP.

**COUNT VI**
**Conversion**

99. Plaintiffs incorporate all preceding factual allegations set forth in paragraphs 1-68 of this Complaint by reference as if fully set forth herein.

100. On November 7, 2024, in a related, but separate case, the Circuit Court of Bibb County, Alabama entered a preliminary injunction enjoining Defendants from using the remaining assets of the fund (*i.e.*, Plaintiffs' and the other investors' monies) pending further rulings of that court.

101. Seelhorst, upon learning of the Bibb County Circuit Court's November 7, 2024, Order, intentionally decided to violate the order and convert Plaintiffs' assets, with the help of Practus, and began a course of converting Plaintiffs' and the other investors' assets to pay the legal fees of Seelhorst, PCCP, PCCM, and PCCA in the related Bibb County litigation. Indeed, in a November 13, 2024 letter to investors, Seelhorst and Practus expressed their clear intent to convert those assets. Seelhorst and Practus did this willfully and maliciously in complete violation of the aforementioned court order. As a result, Seelhorst, PCCP, PCCM, PCCA, and Practus are clearly liable for conversion because Plaintiffs' assets were clearly identifiable through their accounts and Seelhorst, PCCP, PCCM, PCCA, and Practus willfully engaged in taking those assets and converting them for their own personal use.

102. As a result of the conversion of Plaintiffs' assets by Seelhorst, PCCP, PCCM, PCCA, and Practus, Plaintiffs have suffered substantial damages.

**COUNT VII**
**Civil Conspiracy**

103. Plaintiffs incorporate all preceding factual allegations set forth in paragraphs 1-68 of this Complaint by reference as if fully set forth herein.

104. Defendants materially agreed and assisted one another in committing the wrongdoing set forth above and conspired to do so.

105. As a result of Defendants' conspiracy, Plaintiffs have suffered damages.

**<u>PRAYERS FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A. On Count I against Defendants for rescission and/or damages by statutory formula according to proof at trial, of not less than the aggregate amounts paid for the PCCP securities, statutory interest from the date of Plaintiffs' purchase of PCCP securities to the date of judgment, and reasonable attorneys' fees and costs as provided by statute.

B. On Counts II-IV, VII (Fraud; Negligent Misrepresentation; Concealment; Civil Conspiracy), against Defendants for damages according to proof at trial, for prejudgment interest on the detention of money due to be refunded to Plaintiffs, and where appropriate, for treble damages of an amount not less than three times the compensatory damages of Plaintiffs. Plaintiffs also pray the Court award reasonable attorneys' fees and costs as provided by statute and such other relief deemed necessary and proper.

C. On Count V (Breach of Fiduciary Duty), against Seelhorst for damages according to proof at trial (but not less than the aggregate amount Plaintiffs paid for PCCP securities, plus unpaid dividends due on said PCCP securities), for prejudgment interest on the

detention of money due to be refunded to Plaintiffs. Plaintiffs also pray for costs and other relief.

D. On Count VI (Conversion), against Seelhorst, PCCP, PCCM, PCCA, and Practus, for damages according to proof at trial, for prejudgment interest on the conversion of money due to be refunded to Plaintiffs. Plaintiffs also pray the Court award reasonable attorneys' fees and costs as provided by statute and such other relief deemed necessary and proper.

**DEMAND FOR A TRIAL BY JURY**

Plaintiffs hereby demand a trial by struck jury.

Dated this 12th day of February, 2025.

Respectfully submitted,

/s/ *Daniel R. Sanders*

**Daniel R. Sanders, Esquire**
Florida Bar No. 102215
1602 N. 9th Avenue
Pensacola, Florida 32503
T: 850-426-8111
E: Dan@dansanderslaw.com
*Attorney for Plaintiff*

**DEFENDANTS WILL BE SERVED BY CERTIFIED MAIL OR PRIVATE PROCESS SERVER AT THE FOLLOWING ADDRESSES:**

**Darryl Seelhorst**
**14239 Perdido Key Drive, #8**
**Pensacola, FL 32507**

**Oakpoint Fund Services LLC**
**565 Long Cove**
**Avon Lake, OH 44012**

**Kaplan & Company**
**200 N. Fairway Drive—Suite 172**
**Vernon Hills, IL 60061**

**Point Clear Capital Partners,**
**LP c/o Delaware Corporations,**
**LLC 1000 N. West St. Ste.**
**1501**
**Wilmington, DE 19801**

**Point Clear Capital Management,**
**LLC 14239 Perdido Key Dr.**
**PH-8**
**Perdido Key, FL 32507**

**Point Clear Capital Advisors, LLC**
**14239 Perdido Key Dr.**
**PH-8**
**Perdido Key, FL 32507**

**Michael Lapat**
**Law Offices of Michael Lapat**
**2855 N. University DR. Ste**
**230 Coral Springs, FL 33065**

**Practus LLP**
**c/o Capitol Services, Inc.**
**108 Lakeland Ave.**
**Dover, DE 19901**